UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
TONY SINGH,

                      Plaintiff,

           - against -

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.
-------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-2949 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Tony Singh ("Singh" or "Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB").  Plaintiff moves for judgment on the pleadings, asking this Court to remand to the SSA for redetermination.  (Pl.'s Mot. J. Pleadings ("Pl.'s Br."), Dkt. 6.)  The Commissioner of the SSA ("Commissioner" or "Defendant") has filed a cross-motion for judgment on the pleadings, asking this Court to affirm its determination.  (Def.'s Cross-Mot. J. Pleadings ("Def.'s Br."), Dkt. 10-1.)  For the reasons stated below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I.   Procedural History

      Plaintiff filed for DIB on December 28, 2020, alleging disability beginning on August 1, 2020, due to headaches, dizziness, neck pain, back pain, shoulder pain, diabetes, high blood

pressure, breathing problems, and heart disease. (Admin. Tr.[1], Dkt. 5, at 77.) Plaintiff's claim was initially denied, (*id.* at 113–15), and he subsequently requested a hearing before an Administrative Law Judge ("ALJ"), (*id.* at 140–41). A virtual hearing was held on December 14, 2021, before ALJ Janet McEneaney. (*Id.* at 37–75.) An unfavorable decision was made by ALJ McEneaney on July 17, 2023, finding Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (*Id.* at 14–36.) Plaintiff requested review of that decision by the Appeals Council. (*Id.* at 215–17.) On February 14, 2024, the ALJ's decision became final when the Appeals Council denied review. (*Id.* at 1–6.) Plaintiff sought timely judicial review of this decision by this Court on April 19, 2024.[2] (Compl., Dkt. 1.)

## II. The ALJ's Decision

An ALJ applies a five-step inquiry to evaluate Social Security disability claims.[3] *See Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted) (explaining that the plaintiff bears the burden of proof at the first

---

[1] Page references prefaced by "Admin. Tr." refer to the continuous pagination of the Administrative Transcript, (*see* Dkt. 5), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[2] An individual may seek judicial review of any final decision of the Commissioner of Social Security within sixty days after they are mailed the notice of decision. 42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Accordingly, Plaintiff is presumed to have received the notice of decision on February 19, 2024. (Admin. Tr., Dkt. 5, at 1 (showing final decision date of February 14, 2024).) Since Plaintiff filed his Complaint on April 19, 2024, this action is timely. (Compl., Dkt. 1.)

[3] For a detailed description of analyses involved in each step of the five-step inquiry, *see Saposnick v. Comm'r of Soc. Sec.*, No. 20-CV-3844 (PKC), 2022 WL 595184, at *1–2 (E.D.N.Y. Feb. 28, 2022).

four steps of the inquiry, and the Commissioner bears the burden at the final step). Here, at step one, the ALJ noted that Plaintiff has not engaged in any substantial gainful activity since August 1, 2020, the alleged onset date of Plaintiff's claimed disabilities. (Admin. Tr., Dkt 5, at 19.) At step two, Plaintiff was found to have multiple severe impairments: status post endocarditis, status post aortic insufficiency, status post congestive heart failure, hypertension, angina, and plantar fasciitis. (*Id.*) However, the ALJ found that many of the alleged disabilities were not severe, including his obesity, diabetes, traumatic osteoarthritis of the left DIP joint, hepatic steatosis, and his "medically determinable mental impairments of depressive disorder and anxiety disorder." (*Id.* at 20–23.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listing of Impairments[4] contained in Appendix 1 to 20 Code of Federal Regulations Part 404, Subpart P. (*Id.* at 23–25.) At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") necessary to perform "the full range of sedentary work."[5] (*Id.* at 25–31.) Lastly, at step five, the ALJ found that Plaintiff was incapable of performing any past relevant work, (*id.* at 31), but based on his age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy, (*id.* at 32). Thus, Plaintiff was found not to be disabled under the Act, and his DIB claim was denied. (*Id.*)

---

[4] Specifically, the ALJ considered Listings 4.02 (chronic heart failure while on a regimen of prescribed treatment), 4.04 (ischemic heart disease), and 4.05 (recurrent arrhythmias). (Admin. Tr., Dkt. 5, at 23–25.)

[5] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Sedentary work involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally." *Id.*

**DISCUSSION**

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions in determining Plaintiff's RFC, improperly rejected Plaintiff's subjective statements, and failed to properly consider the impact of Plaintiff's mental impairments in determining his RFC. (*See generally* Pl.'s Br., Dkt. 6.) For the reasons below, the Court finds that (1) the ALJ improperly substituted her own opinion for that of the medical expert in weighing the persuasiveness of SSA consultative examining psychologist Dr. John Nikkah's ("Dr. Nikkah") expert opinion; and (2) the ALJ failed to properly account for Plaintiff's mental impairments in determining Plaintiff's RFC.

**I.     The ALJ Substituted Her Judgment for that of a Medical Expert**

First, in evaluating the persuasiveness of Dr. Nikkah's opinion, the ALJ impermissibly substituted her own judgment for that of the medical expert. Dr. Nikkah performed a consultative psychological examination for Plaintiff on April 14, 2021. (Admin Tr., Dkt 5, at 21; *see also id.* at 562–66.) The ALJ found portions of Dr. Nikkah's opinion to be persuasive. (*Id.* at 21.) For example, Dr. Nikkah reported "that [Plaintiff] has mild limitations in his ability to understand, remember, or apply complex directions and instructions; use reason and judgment to make work related decisions; and sustain concentration and perform a task at a consistent pace." (*Id.*) The

4

ALJ found this "persuasive" because these findings were supported by Plaintiff's "lack of treatment for any mental health problems," his "general independence with activities of daily living, and Dr. Nikkah's reporting of normal or close to normal examination findings." (*Id.*)

At the same time, the ALJ found certain other portions of Dr. Nikkah's report to be "less persuasive." (*Id.*) Specifically, though Dr. Nikkah opined that Plaintiff had "mild to moderate limitations" in his ability to regulate emotions, control behavior, and maintain well-being, the ALJ concluded that Plaintiff "has no more than mild limitations" in those areas. (*Id.*) In reaching this conclusion, the ALJ cited to Plaintiff's "general independence with activities of daily living," as well as to Dr. Nikkah's other findings related to Plaintiff's mental capabilities including, *inter alia*, "cooperative behavior, adequate overall manner of relating, normal motor behavior, coherent and goal directed thought processes, full affect, neutral mood, average intellectual functioning, and fair to good insight and judgment." (*Id.*)

While "[i]t is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently, . . . when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy." *Artinian v. Berryhill*, No. 16-CV-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Here, it is true that Plaintiff reported to Dr. Nikkah that he was capable of daily life activities. (Admin. Tr., Dkt. 5, at 21 ("[Plaintiff] alleged [to Dr. Nikkah] symptoms of depression and anxiety. Despite the alleged symptoms, [Plaintiff] reported that he could dress, bathe, groom himself, cook, do general cleaning, do laundry, shop, manage his money, drive, and take public transportation."); *see also id.* at 564–65.) At the same time, it is undisputed that Dr. Nikkah was aware of these daily activities but nevertheless concluded that Plaintiff suffered from "mild to moderate limitations in his ability to regulate emotions, control

5

behavior, and maintain well-being." (*Id.* at 21.) In other words, the ALJ found Dr. Nikkah's opinion "less persuasive" by citing to facts about Plaintiff that were already known to Dr. Nikkah when he formed his medical opinion. The record thus indicates that the ALJ disagreed with Dr. Nikkah on how to read the evidence; such a disagreement is not a proper basis for finding the medical expert's opinion to be less persuasive. *See Bullock v. Comm'r of Soc. Sec.*, No. 18-CV-7364 (PKC), 2020 WL 2836717, at *8 (E.D.N.Y. June 1, 2020) ("By discrediting the opinions of professionals because they were inconsistent with the ALJ's reading of the evidence, the ALJ improperly substituted [her] own medical opinion for that of the medical expert[]." (internal quotation marks and citation omitted)).

It is well-established that "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [she] is not free to set [her] own expertise against that of a physician who [submitted an opinion to or] testified before [her]." *Wikiert v. Comm'r of Soc. Sec.*, No. 17-CV-6799 (PKC), 2019 WL 959665, at *2 (E.D.N.Y. Feb. 26, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). To the extent that the ALJ found Dr. Nikkah's report to be internally inconsistent, the ALJ should have sought clarification from Dr. Nikkah before deciding to give that portion of his opinion less weight. *Samaru v. Comm'r of Soc. Sec.*, No. 18-CV-6321 (KAM) (LB), 2020 WL 3051576, at *13 (E.D.N.Y. June 8, 2020) ("[G]iven the ALJ's finding that [the medical expert's] opinion was internally inconsistent with his treatment notes and/or inconsistent with other evidence in the record, the ALJ should have explained his finding and re-contacted [the medical expert] to further develop or reconcile the record."). Here, the ALJ failed to do so. For these reasons, the Court concludes that the ALJ impermissibly substituted her own judgment for that of Dr. Nikkah. While this error, in itself,

6

might not require remand, as discussed next, the ALJ's failure to consider Dr. Nikkah's finding with respect to this mental impairment, even if non-severe, constitutes error warranting remand.

## II. The ALJ Failed to Consider Plaintiff's Mental Impairments in Determining his RFC

In determining a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, including those deemed non-severe. 20 C.F.R. § 404.1545(2). "Although a finding of a non-severe mental limitation does not necessitate an RFC determination that 'include[s] a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments[,]' an ALJ is still required to evaluate a Plaintiff's non-severe impairments when formulating their RFC determination." *Galluci v. Kijakazi*, No. 22-CV-3147 (ALC), 2023 WL 6035664, at *7 (S.D.N.Y. Sep. 15, 2023) (quoting *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022)). Where the ALJ determines that the non-severe mental impairments do not require any RFC accommodation, they "should clearly explain why," and a failure to do so "constitutes legal error and grounds for remand." *Id.* (internal quotation marks and citation omitted).

Here, although the ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," (Admin. Tr., Dkt. 6, at 20), the record does not support such a statement. For example, in formulating Plaintiff's RFC, the ALJ did not even acknowledge Dr. Nikkah's opinion that Plaintiff "has mild to moderate limitations in his ability to regulate emotions, control behavior, and maintain well-being." (Admin. Tr., Dkt. 5, at 21, 25–31.) Nor did the ALJ mention anxiety or depression in the hypotheticals she posed to the vocational expert during the hearing. (*Id.* at 70–72); *see Vasquez v. Comm'r of Soc. Sec.*, No. 18-CV-1107 (AMD), 2019 WL 765260, at *3 (E.D.N.Y. Feb. 21, 2019) (noting the ALJ failed to mention anxiety and depression

7

to the vocational expert as support for the conclusion that those conditions were not considered in the RFC determination). Indeed, the only evidence of Plaintiff's mental impairments that the ALJ explicitly referenced in her RFC analysis is his "testimony" and Adult Functioning Form which reported, *inter alia*, that Plaintiff was experiencing "anxiety, headaches, and mood swings." (Admin. Tr., Dkt. 5, at 30–31.) Further, the only indication that Dr. Nikkah's opinion of "mild to moderate limitations" was considered at all in the RFC determination was the ALJ's statement that "[i]n making this [RFC] finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 26.)

Defendant argues that there was full consideration of Dr. Nikkah's opinion in the RFC determination because his opinion was "substantial evidence in support of the ALJ's conclusion that Plaintiff's mental impairments did not significantly impact his ability to do basic work activities and, thus, were non-severe." (*See* Def.'s Br., Dkt. 10-1, at 14.) But Defendant is conflating the ALJ's severity assessment with her RFC determination. "The analyses of impairments when determining severity at step two and when later formulating the claimant's RFC are related but distinct." *Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp. 3d 365, 375 (S.D.N.Y. 2023). "Finding an impairment to be non-severe is not the end of the ALJ's obligation to consider that impairment. When formulating the claimant's RFC, the ALJ must consider 'all of [the claimant's] medically determinable impairments . . . including . . . medically determinable impairments that are not "severe."'" *Id.* (citing 20 C.F.R. § 404.1545(a)(2)).

Even if the ALJ's treatment of Dr. Nikkah's opinion provided substantial evidence of the severity assessment—which the Court rejected *supra*—this does not support the position that the ALJ's RFC analysis was similarly supported by sufficient evidence. Finding the evidence

8

regarding Plaintiff's mental impairments "less persuasive" does not permit the ALJ to disregard it entirely in the RFC analysis—instead, the ALJ is required to evaluate the totality of the evidence in determining Plaintiff's RFC.  *Aghadiuno v. Comm'r of Soc. Sec.*, No. 20-CV-6493 (OTW), 2023 WL 1516572, at *4 (S.D.N.Y. Feb. 3, 2023) (holding the ALJ erred because they "failed to consider the totality of the evidence" in determining the plaintiff's RFC).  Moreover, a single conclusory statement indicating that "all symptoms" were considered when making the RFC determination "does not obviate the ALJ's duty to fully account for and explain a claimant's severe and non-severe limitations when formulating a claimant's RFC at step four."  *Galluci*, 2023 WL 6035664, at *7 (holding that despite the ALJ's statement that "all medically supported restrictions have been incorporated into the decision's [RFC] assessment, including those stemming from both severe and non-severe impairments," the ALJ failed to evaluate evidence of a claimant's non-severe anxiety disorder in the RFC determination).

Since it is unclear from the record that the ALJ accounted for Plaintiff's anxiety and depression in her RFC determination, "[r]emand is appropriate so that the ALJ can consider the extent to which the plaintiff's mental health impairments might affect [his] RFC, an evaluation that may require additional input from the vocational expert."  *Vasquez*, 2019 WL 765260, at *3.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 22, 2025
Brooklyn, New York